JAIME I. Ríos COLÓN, demandante y recurrido, *v.* CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO, demandada y recurrente.

*Número:* CE-95-141          *Resuelto:* 11 de octubre de 1995

*Miguel Pagán* y *Claudio Aliff,* abogados de la parte recurrente; *Efraín Maceira Ortiz,* abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

I

El 17 de abril de 1986, Jaime I. Ríos Colón comenzó a trabajar en la Corporación del Fondo del Seguro del Estado (en adelante Fondo) como empleado provisional. El 1ro de septiembre de 1988, Ríos Colón fue nombrado a un puesto gerencial de carrera como Ayudante del Director Médico, asignado al Dispensario de la Región de Ponce.

El 15 de junio de 1994, Ríos Colón presentó un escrito ante la Junta de Apelaciones del Fondo (en adelante Junta de Apelaciones),(¹) el cual ésta acogió como una apelación. En él alegó, en síntesis, que como resultado del cambio de gobierno en 1993, se le había marginado en su trabajo y reducido sustancialmente sus deberes y responsabilidades. Adujo que mediante comunicación notificada el 5 de enero de 1994 lo habían trasladado y reclasificado (o ambas cosas) ilegalmente, y que todo ello se debía a que había sido discriminado por razones de índole política.(²)

---

(¹) Ríos Colón enmendó su apelación posteriormente, el 29 de julio de 1994, bajo el título de "Despojo de deberes; Reclasificación y/o Traslado ilegal; Impugnación de ascenso".

(²) Alegó, además, que las actuaciones del Fondo del Seguro del Estado (en adelante Fondo) le habían causado unas pérdidas económicas y de otra índole, por lo

El 5 de agosto de 1994, Ríos Colón presentó ante la Junta de Apelaciones una "Solicitud de especificaciones, interrogatorio, requerimiento de admisiones y solicitud de producción de documentos" dirigida al Fondo.

Luego de varios trámites procesales y de que el Fondo presentara una segunda solicitud de orden protectora (en la que planteó que Ríos Colón no tenía derecho al descubrimiento de prueba solicitado), el 20 de octubre de 1994 la Junta de Apelaciones emitió una orden al Fondo dándole un término de cinco (5) días para que entregara "a la parte apelante los documentos solicitados *para evitar que ésta se encuentre en un estado de indefensión el día de la vista*" o especificara sus objeciones a las preguntas o la solicitud de documentos, si ese fuese el caso.

El 24 de octubre de 1994, el Fondo presentó un recurso de revisión judicial ante el Tribunal Superior, Sala de San Juan. Solicitó que se dejara sin efecto la orden dictada por la Junta de Apelaciones. El 31 de octubre, el Tribunal Superior emitió una orden en la que dio un término a Ríos Colón para que mostrara causa por la cual no debía relevar al Fondo de agotar los remedios administrativos y asumir la jurisdicción sobre el recurso presentado y, por vía de excepción,[3] expedir el auto solicitado y revocar la orden emitida por la Junta de Apelaciones.

Examinada la comparecencia de Ríos Colón,[4] el tribu-

---

que solicitó compensación por sus pérdidas, reposición en el empleo y que se dejara sin efecto el nombramiento interino de la persona que estaba llevando a cabo sus labores.

[3] Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2173.

[4] Tanto en sus múltiples comparecencias ante el Tribunal Superior como ante esta Curia, Ríos Colón ha planteado que la segunda solicitud de orden protectora presentada por el Fondo ante la Junta de Apelaciones del Fondo (en adelante Junta de Apelaciones) no equivalía a una moción de reconsideración, cuya presentación era de carácter jurisdiccional para la presentación de la revisión judicial. Nos parece que tiene razón. Ello no obstante, habida cuenta de que Ríos Colón no se expresó en cuanto a la intención que le notificara dicho foro, en su orden de mostrar causa, de relevar al Fondo de agotar los remedios administrativos, confirmamos la determinación que hiciera el Tribunal Superior de asumir jurisdicción en este caso, por vía de excepción al referido requisito jurisdiccional. Véanse las Secs. 3.15 y 4.3 de la Ley de

nal de instancia dictó una sentencia el 4 de enero de 1995. En ella, revocó la determinación de la Junta de Apelaciones y resolvió que no existe el derecho al descubrimiento de prueba solicitado al referido foro administrativo.

Ríos Colón nos solicitó que revisáramos esa determinación. Luego de complicados trámites procesales,([5]) el 28 de abril de 1995 le dimos un término a la parte recurrida para que mostrara causa por la cual no debíamos expedir el recurso presentado y dictar sentencia para revocar la dictada por el tribunal de instancia.

El recurrido ha comparecido. Hemos estudiado su comparecencia y las numerosas mociones presentadas posteriormente por ambas partes. Estamos en posición de resolver y lo hacemos según intimado.

## II

La administración del sistema de personal aplicable a todos los funcionarios y empleados gerenciales de carrera del Fondo que no estén cubiertos por convenios colectivos —como es el caso del demandante en el caso de autos— está regida por el Reglamento de Personal de la Corporación del Fondo del Seguro del Estado de 1ro de marzo de 1983 (en adelante Reglamento), el cual incorpora el principio de mérito.([6]) El referido Reglamento creó la

---

Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. secs. 2165 y 2173.

([5]) Entre ellos, cabe señalar que Ríos Colón originalmente presentó su escrito de apelación al Tribunal de Circuito de Apelaciones el 6 de febrero de 1995. El 21 de febrero, dicho foro resolvió que de acuerdo con las fechas pertinentes al aspecto procesal del caso, lo correcto hubiese sido que Ríos Colón presentara un escrito de *certiorari* ante esta Curia bajo las disposiciones vigentes antes de entrar en vigor la Ley de la Judicatura de Puerto Rico de 1994, por lo que nos refirió el expediente para nuestra consideración. En vista de ello, acogimos el recurso presentado como uno de *certiorari*.

([6]) El Art. 6 de la ley habilitadora del Fondo, Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 8, conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, faculta al Administrador del Fondo a organizar y administrar su propio sistema de personal sin sujeción a la ley de personal aplicable a los empleados públicos, pero sujeto al principio de mérito.

Junta de Apelaciones y le confirió la autoridad para revisar: (1) las decisiones del Administrador en casos de destituciones, cesantías, suspensiones de empleo y sueldo, o cualquier acción de carácter disciplinario, Secs. 12.1 y 12.2 del Reglamento, y (2) las decisiones de éste en casos de clasificación o reclasificación de un puesto o de cambio en los deberes, la autoridad o las responsabilidades de un puesto (Sec. 8.9 del Reglamento).

Las normas de adjudicación adoptadas en el Reglamento aludido establecen que para resolver una apelación presentada por un empleado ante la Junta de Apelaciones, ésta puede ordenar una investigación sobre el particular y luego desestimar la apelación si la considera frívola. En la alternativa, la Junta de Apelaciones puede ordenar la celebración de una vista administrativa con citación a las partes involucradas. Sec. 12.8 del Reglamento. Las decisiones de la Junta de Apelaciones son finales y obligatorias para las partes, sujetas únicamente a revisión por parte de los tribunales. Sec. 12.7 del Reglamento. La Junta de Apelaciones está facultada, además, para dictar las órdenes remediales que procedan, incluso la restitución en el empleo, el pago de salarios dejados de percibir y la concesión de todos los beneficios marginales a que el empleado querellante hubiese tenido derecho. Sec. 12.9 del Reglamento. Nótese, pues, que la vista que se celebra ante la Junta de Apelaciones es propiamente una vista formal, porque en ella se ventilan de manera definitiva al nivel administrativo todos los derechos del empleado, y las determinaciones de hecho de la Junta de Apelaciones están sujetas únicamente al limitado ámbito de la revisión judicial.

---

*Laboy v. E.L.A.*, 115 D.P.R. 190, 192–193 (1984). Además, bajo las disposiciones de la Sec. 10.6 de la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 L.P.R.A. sec. 1338, el principio de mérito es aplicable a las agencias e instrumentalidades del Gobierno de Puerto Rico excluidas de la referida ley, en cuanto a su personal no unionado. *Reyes Coreano v. Director Ejecutivo*, 110 D.P.R. 40, 49–50 (1980).

■ En relación con los mecanismos administrativos de adjudicación, la Sec. 3.1 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), 3 L.P.R.A. sec. 2151, dispone, en lo pertinente, lo siguiente:

Cuando por disposición de una ley, regla o reglamento o de este Capítulo una agencia deba adjudicar *formalmente* una controversia, los procedimientos deberán regirse por las disposiciones de este subcapítulo.

En todo procedimiento adjudicativo *formal* ante una agencia se salvaguardarán los siguientes derechos:

(a) Derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte.

(b) *Derecho a presentar evidencia.*

(c) Derecho a una adjudicación imparcial

(d) Derecho a que la decisión sea basada en el expediente. (Énfasis suplido.)

■ Más específicamente, en cuanto a la aplicabilidad de los mecanismos de descubrimiento de prueba a los procedimientos administrativos adjudicativos, la Sec. 3.8 de la referida ley dispone que:

*Sec. 2158. Mecanismos de descubrimiento de prueba*

(a) Los procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo.[7]

■ En el caso ante nos, no existe controversia en cuanto a que el descubrimiento de prueba fue autorizado por el funcionario correspondiente. Lo único que tenemos que determinar en este caso es, pues, si el reglamento administrativo aplicable autoriza la utilización de los mecanismos de descubrimiento de prueba. En relación con esto, la Sec. 12.7 del Reglamento dispone que:

---

[7] La referida sección dispone, además, que cuando el procedimiento adjudicativo es iniciado por la agencia, el querellado siempre tendrá derecho a utilizar los mecanismos de descubrimiento de prueba.

La Junta [de Apelaciones] tendrá facultad para celebrar vistas, tomar juramento, requerir la comparecencia de testigos, expedir citaciones *y requerir toda aquella información o prueba que estimare necesaria para la solución del caso.* En caso de rebeldía o negativa de alguna persona a obedecer una citación expedida, la Junta gestionará la comparecencia por cualquier medio legal, incluyendo el poder recurrir a un tribunal para hacer efectiva dicha citación. (Énfasis suplido.)

El Fondo alega que el Tribunal a quo no erró en determinar que la referida disposición reglamentaria no autoriza la utilización de los mecanismos de descubrimiento de prueba, porque ésta se refiere únicamente a prueba interesada por la Junta de Apelaciones durante la celebración de la vista adjudicativa, y no a prueba interesada por una de las partes durante las etapas anteriores a la celebración de la vista en su fondo. No estamos de acuerdo.

◼ El lenguaje de la disposición reglamentaria antes citada no especifica o limita el momento en que la Junta de Apelaciones puede ejercer la referida facultad. Tampoco limita el requerimiento de información o prueba a aquel que es gestionado por iniciativa exclusiva de la Junta de Apelaciones. Por el contrario, la referida disposición provee una autorización bastante amplia y discrecional a la Junta de Apelaciones para solicitar cualquier prueba que ésta estime necesaria para la solución del caso y cuando ésta así lo estime. En vista de que dicha disposición es clara y carece de ambigüedad, no debe interpretarse para añadirle limitaciones o restricciones que no surgen de su texto. *Román Mayol v. Tribunal Superior,* 101 D.P.R. 807 (1973); *Román v. Superintendente de la Policía,* 93 D.P.R. 685 (1966); *Meléndez v. Tribunal Superior,* 90 D.P.R. 656 (1964).

◼ Por otro lado, *ambas partes aceptan que anteriormente la Junta de Apelaciones, de ordinario, ha interpretado la aludida disposición en favor del uso de mecanismos de descubrimiento de prueba.* En el pasado, incluso el propio Fondo ha solicitado el descubrimiento de prueba a

su favor en otros casos.[8] Reiteradamente hemos reconocido que la interpretación administrativa de una ley por el funcionario encargado de ponerla en vigor merece gran peso y deferencia. *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991); *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669 (1987): *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816 (1986); *Tormos & D.A.C.O. v. F.R. Technology*, 116 D.P.R. 153 (1985); *M & V Orthodontics v. Negdo. Seg. Empleo*, 115 D.P.R. 183 (1984); *Quevedo Segarra v. J.A.C.L.*, 102 D.P.R. 87 (1974); *Román v. Superintendente de la Policía*, supra; *Ready Mix Concrete v. Comisión Industrial*, 92 D.P.R. 37 (1965). Por ello, los tribunales no deben interpretar de manera limitante las disposiciones reglamentarias que el organismo administrativo en cuestión haya interpretado liberalmente, a menos que ello sea estrictamente necesario. En este caso no lo es.

Nótese que la disposición reglamentaria en cuestión le confiere a la Junta de Apelaciones una amplia autoridad para requerir todo tipo de información y documentos que ella estime necesarios para la solución del caso. Se trata de una razonable norma general que le permite a la Junta de Apelaciones la discreción necesaria para resolver bien cada caso, según sus realidades particulares. La parte recurrida plantea que dicha disposición sólo permite que el requerimiento de prueba lo pueda hacer la Junta de Apelaciones únicamente durante la celebración de la vista adjudicativa y por iniciativa propia, pero tal interpretación no tiene buen sentido jurídico. El tipo de prueba necesario

---

[8] El Fondo alegó en el tribunal de instancia que su anterior posición era incorrecta y que la había cambiado. El tribunal de instancia, por su parte, resolvió que la interpretación que el Fondo le hubiese dado anteriormente a la disposición reglamentaria en cuestión no le impedía cambiar su posición si entendía que era incorrecta. Estamos de acuerdo. Ello no obstante, cabe señalar que la interpretación administrativa que merece deferencia judicial en este caso, como discutiremos más adelante, es la de la Junta de Apelaciones y no la de la Corporación del Fondo del Seguro del Estado, la cual, en el contexto de casos como el de autos, no es el foro administrativo encargado de implantar la referida disposición reglamentaria, sino una de las partes implicadas en la controversia.

para la justa solución de un caso como el de autos, que tiene su génesis en unas alegaciones de discrimen político, debe gestionarse antes de celebrarse la vista adjudicativa, para evitar así la dilación excesiva de los procedimientos. Vista la gravedad del daño alegado, si éste existe, debe conjurarse de la manera más rápida y eficaz posible. En estos casos, resulta de mayor utilidad permitir el descubrimiento de prueba previo a la celebración de la vista, para que la evidencia pertinente pueda ser presentada durante la vista de manera organizada, concisa y expedita.

Nótese, además, que la vista que se celebrará oportunamente ante la Junta de Apelaciones en este caso será propiamente una vista formal, según señalamos antes, por lo que existe un interés legítimo de parte del promovente en el previo descubrimiento de prueba, que no está presente cuando se trata de vistas informales. *Marrero Caratini v. Rodríguez Rodríguez*, 138 D.P.R. 215 (1995). Ello es particularmente así, ya que la posterior revisión judicial de la decisión de la Junta de Apelaciones estará limitada a decidir si dicha decisión está apoyada por prueba sustancial. El derecho del promovente a presentar evidencia para sostener sus planteamientos se ejerce esencialmente ante la Junta de Apelaciones. Impedir o limitar innecesariamente el acceso al descubrimiento de prueba en estos casos, pues, puede dar lugar a que se conculque el debido proceso de ley y las disposiciones de la L.P.A.U. que son pertinentes, 3 L.P.R.A. sec. 2151.

Surge claramente del texto reglamentario en cuestión que la única limitación al uso de mecanismos de descubrimiento de prueba es el requisito previo de que la propia Junta de Apelaciones haga una determinación de que la prueba interesada es necesaria para la solución del caso. En ese sentido, la disposición reglamentaria cumple con la intención legislativa de la L.P.A.U. de no complicar superfluamente los procedimientos administrativos ni dejar el descubrimiento de prueba a la merced del capricho

de las partes. De acuerdo con la disposición reglamentaria en cuestión, en todos los casos ante la Junta de Apelaciones, la parte que interese descubrir determinada prueba tiene que someter el correspondiente requerimiento a la Junta de Apelaciones para que ésta determine si la prueba que interesa es necesaria o no para la solución del caso administrativo pendiente. No quiere ello decir, como erróneamente resolvió el tribunal de instancia, que la necesidad de la prueba en cuestión no .pueda ser presentada por una de las partes o que dicha prueba no pueda ser requerida antes de la celebración de la vista.

Por estas razones, resolvemos que la reiterada interpretación de la Junta de Apelaciones de la cuestión ante nos surge razonablemente de la amplia autoridad discrecional conferida a dicha junta por el efecto combinado de la Sec. 3.8 de la L.P.A.U, 3 L.P.R.A. sec. 2158, y la Sec. 12.7 del Reglamento. Erró el tribunal de instancia en determinar que la referida interpretación era contraria a derecho.

### III

Existen, además, unas consideraciones de alto interés público que apoyan la razonabilidad de la manera en que la Junta de Apelaciones ha interpretado reiteradamente la referida disposición reglamentaria.

El Reglamento, por tener un propósito eminentemente social y en favor de la preservación de los derechos de los empleados de esa agencia, debe ser interpretado liberalmente en favor del empleado, especialmente en casos como el de autos, que surgen de una alegación de discrimen político. En tales casos, el empleado que alega haber sido discriminado necesita de los mecanismos de descubrimiento de prueba para obtener información que, por la naturaleza de las alegaciones, sólo tiene la agencia en su poder. Únicamente así puede el empleado cumplir con los

180

rigurosos estándares de prueba aplicables a casos de discrimen político.

Anteriormente hemos reconocido la importancia social de proteger el servicio público de los "vaivenes de la política partidista".(⁹) Además, hemos resuelto reiteradamente que en Puerto Rico un empleado público de carrera tiene un reconocido interés en la retención de su empleo y en que no lo priven de éste sin concederle unas garantías mínimas, cónsonas con el debido proceso de ley. Véanse: *Torres Solano v. P.R.T.C.*, 127 D.P.R. 499 (1990); *Colón v. C.R.U.V.*, 115 D.P.R. 503 (1984). De igual manera, el Reglamento dispone, además, que un empleado gerencial de carrera que sufra un cambio en los deberes, las responsabilidades o la autoridad de su puesto de manera arbitraria o con propósitos disciplinarios, tiene derecho a apelar cualquier decisión administrativa que le sea adversa a la Junta de Apelaciones, iniciando así un procedimiento adjudicativo formal de sus derechos que, aunque de carácter administrativo, está caracterizado por su derecho a "examinar y presentar toda la prueba pertinente para validar su planteamiento y refutar" la ofrecida por la agencia. *Marrero Caratini v. Rodríguez Rodríguez*, supra, pág. 224. Aunque bajo la L.P.A.U. un empleado público no tiene un derecho *estatutario* al descubrimiento de prueba, las consideraciones de orden público mencionadas anteriormente sirven de apoyo para que la agencia administrativa permita que se utilice esta herramienta para obtener la información necesaria para la justa solución del caso.

---

(⁹) En *Orta v. Padilla Ayala*, 131 D.P.R. 227 (1992), dijimos que nuestra Constitución, leyes y reglamentos prohíben que se discrimine en el empleo por razones político-partidistas y que en la medida en que se respete el derecho de los empleados públicos que ostentan puestos de carrera a servir libres de prácticas discriminatorias, "se mejorará la administración pública, los servicios que el Estado tiene que prestar —y por los cuales pagan monetariamente todos los ciudadanos— y el Pueblo fortalecerá su fe en la democracia y en sus instituciones gubernamentales". Íd., pág. 231.

## IV

Por los fundamentos expuestos anteriormente, *resolvemos que erró el tribunal a quo en determinar que la Junta de Apelaciones no tiene facultad para ordenar el descubrimiento de prueba que estime necesario para la solución del caso, previo a la celebración de la vista adjudicativa y a instancia de una de las partes. Procede que se expida el auto de "certiorari"; se revoque la sentencia dictada por el Tribunal Superior, Sala de San Juan, el 4 de enero de 1995, y se devuelva el expediente a dicho foro para la continuación de los procedimientos conforme a lo aquí resuelto.*

El Juez Asociado Señor Negrón García concurrió sin opinión escrita. El Juez Asociado Señor Corrada Del Río disintió con una opinión escrita.

— O —

Opinión disidente emitida por el Juez Asociado Señor Corrada Del Río.

La opinión que emite el Tribunal en el caso de autos esencialmente resuelve que una parte puede, a la luz de la Sec. 12.7 del Reglamento de Personal de la Corporación del Fondo del Seguro del Estado de 1ro de marzo de 1983 (en adelante Reglamento), solicitar que la Junta de Apelaciones de dicha entidad autorice el descubrimiento de prueba en los procedimientos pendientes ante dicha junta.

No podemos concurrir con lo resuelto. Veamos.

Dentro del ordenamiento jurídico puertorriqueño, el descubrimiento de prueba en los foros administrativos está regulado primariamente por la Sec. 3.8(a) de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en addante L.P.A.U.), 3 L.P.R.A. sec. 2158, que dispone, en lo pertinente:

(a) Los procedimientos de descubrimiento de prueba no serán de aplicación a los casos de adjudicación administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo.

Sobre el particular, el Reglamento dispone en su Sec. 12.7, en lo pertinente, que:

La Junta [de Apelaciones] tendrá facultades para celebrar vistas, tomar juramento, requerir la comparecencia de testigos, expedir citaciones y *requerir toda aquella información o prueba que estimare necesaria para la solución del caso*. En caso de rebeldía o negativa de alguna persona a obedecer una citación expedida, la Junta gestionará la comparecencia por cualquier medio legal, incluyendo el poder recurrir a un tribunal para hacer efectiva dicha citación. (Énfasis suplido.)

Nótese que ni la Sec. 3.8(a) de la L.P.A.U., *supra*, ni la Sec. 12.7 del Reglamento que acabamos de citar establecen una distinción entre procedimientos administrativos formales o informales, siendo estas normas de aplicación a ambas modalidades.

Luego de estudiadas las disposiciones previamente citadas, así como las comparecencias de las partes, no podemos concurrir con la opinión emitida a los efectos de que la referida disposición provee una autorización bastante amplia y discrecional a la Junta de Apelaciones para aplicar los procedimientos de descubrimiento de prueba.

El propio texto de la Sec. 12.7 del Reglamento citado no se refiere a las etapas anteriores a la vista del caso en su fondo —cuando se llevan a cabo los trámites de descubrimiento— sino que éste se refiere a la etapa de la vista en sí. A tales efectos dispone el antes citado reglamento que la Junta de Apelaciones tendrá la facultad de "requerir toda aquella información o prueba que estimare necesaria para la *solución* del caso". (Énfasis suplido.)

Sobre este particular nos es forzoso concurrir con las expresiones del foro de instancia:

El [referido] texto comienza precisamente reconociendo la fa-

cultad de la Junta de celebrar dichas vistas y de requerir la presencia de los testigos que habrán de declarar en éstas. Esas disposiciones no estarían ahí si el asunto siendo tratado fuese el de descubrimiento de prueba. Notamos además que el texto de dicha sección no se refiere a la evidencia que pudiera ser de interés a una de las partes, que es de lo que trata el descubrimiento, sino de aquella prueba que la propia Junta "estimare necesaria para la solución del caso", que no es lo mismo. Notamos por último, como algo muy significativo, la limitación reglamentaria de que se trate de prueba "necesaria" para la solución del caso. Ello no es cónsono con la teoría de que esa disposición del reglamento tiene que ver con descubrimiento de prueba, pues cuando se trata propiamente de descubrimiento esa limitación no existe, y (como reconoce el recurrido en su oposición al recurso) se permite incluso descubrir datos que ni siquiera serían admisibles en la vista del caso en su fondo, si ello puede conducir a otra evidencia que sí es admisible. (Sentencia del tribunal de instancia, págs. 3–4.) Apéndice, págs. 000004–000005.

La razón para limitar la utilización de los mecanismos de descubrimiento de prueba en la fase administrativa adjudicativa es evidente. Lo que se persigue es en todo momento acelerar la adjudicación. Si se permiten estos mecanismos, el procedimiento administrativo —lejos de ser rápido, sencillo y sin formalismos— corre el riesgo de convertirse en una copia del procedimiento judicial, el cual por su naturaleza no puede evitar el rigor procesal y la extensión de sus términos. Sabido es que el uso y el abuso de los métodos de descubrimiento de prueba ocasionan la prolongación de los procedimientos, por lo que con esta decisión abonamos a hacer más lenta la justicia en perjuicio de todos.

En otras palabras, se desvirtúa el propósito del legislador al crear un proceso administrativo rápido y sencillo. En los casos en que la agencia inicie el procedimiento, es mandatorio que se permitan dichos mecanismos como garantías procesales a los querellados.

En este caso, los hechos que dan lugar al presente recurso no se pueden enmarcar dentro de esta situación. La Agencia no inició el procedimiento. Jurídicamente ha-

blando, no es lo mismo que la Junta de Apelaciones, como cuerpo jurídico, tenga derecho a requerir aquella información o prueba que estime necesaria para la solución del caso a que las partes tengan derecho al descubrimiento de prueba antes de la vista del caso.

Estos son dos (2) conceptos diferentes que se entremezclan en la opinión de este Tribunal para producir un desafortunado resultado, ya que la L.P.A.U. sólo reconoce el descubrimiento de prueba a la parte como una excepción.

Expresa el Tribunal en su opinión que "[e]xisten, además, unas consideraciones de alto interés público que apoyan la razonabilidad de la manera en que la Junta de Apelaciones ha interpretado reiteradamente la referida disposición reglamentaria". Opinión mayoritaria, pág. 179. Esta expresión surge a raíz de los reclamos que hace el demandante recurrido, a los efectos de que ha sido objeto de discrimen político.

En Puerto Rico aspiramos a que el personal gubernamental forme un cuerpo de servidores públicos eficientes, honestos y que en su escala de valores guarden mayor lealtad a su compromiso de servir al pueblo en las distintas áreas que su vocación les ha llevado a ocupar que el fervor eleccionario por dominar el poder público e involucrar a los empleados en los vaivenes del patronazgo político. Sin embargo, es de primordial importancia que las instituciones del derecho no se dejen influenciar por estas corrientes; es por esto que no podemos coincidir con la opinión emitida en el caso de autos a los efectos de que:

> El Reglamento, por tener un propósito eminentemente social y en favor de la preservación de los derechos de los empleados de esa agencia, debe ser interpretado liberalmente en favor del empleado, especialmente en casos como el de autos, que surgen de una alegación de discrimen político. Opinión mayoritaria, pág. 179.

Para proteger a los servidores públicos que honran su

vocación tenemos la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1301 *et seq.*, y varios otros recursos judiciales mediante los cuales se pueden dilucidar en los tribunales, con todas las garantías constitucionales, estatutarias y procesales que en dichos foros se conceden, cualquier reclamo sobre discrimen de índole político. A manera de ejemplo, la Ley de Derechos Civiles, Ley Núm. 131 de 13 de mayo de 1943, según enmendada, 1 L.P.R.A. sec. 13 *et seq.*, y la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1981 *et seq.*, proclaman la política pública prevaleciente en nuestro país de aislar el personal de servicio gubernamental de la actividad partidista de modo que la política no dañe el empleo ni lesione al empleado público.

Sin embargo, en el caso de autos fue el demandante recurrido el que seleccionó el foro administrativo por sobre las otras alternativas disponibles estatutariamente, y que le conceden todas las garantías de descubrimiento de prueba disponibles. No podemos concurrir, por tal razón, con la opinión del Tribunal cuando, en casos como el de autos, la relación existente entre el peticionario y el derecho que éste reclama prevalecen por encima de la clara y contundente expresión de la ley. Disentimos.